UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

NIVEL PARTS & MANUFACTURING
CO., LLC,

    Plaintiff,

v.                                           Case No. 3:17-cv-146-J-32JRK

TEXTRON, INC.,

    Defendant.

## O R D E R

This patent infringement action concerning an after-market seat assembly for golf carts is before the Court on Plaintiff Nivel Parts & Manufacturing Co., LLC's Motion for Preliminary Injunction (Doc. 3), to which Defendant Textron, Inc. responded (Doc. 29), and Nivel replied (Doc. 31). On April 21, 2017, the Court held an in-person hearing on the motion, the record of which is incorporated herein. (Doc. 34).

A party seeking a preliminary injunction in a patent case must establish "(1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest." Titan Tire Corp. v. Case New Holland, Inc., 566 F.3d 1372, 1375-76 (Fed. Cir. 2009) (quoting Winter v. Natural Res. Def. Council Inc., 555 U.S. 7, 20 (2008)). "Because, irrespective of relative or public harms, a movant must establish both a likelihood of success on the merits and irreparable harm . . . the district court may deny a preliminary injunction based on

the movant's failure to establish either of these two crucial factors without making additional findings respecting the other factors." Tiber Labs., LLC v. Hawthorn Pharm., Inc., 527 F. Supp. 2d 1373, 1378 (N.D. Ga. 2007) (emphasis in original) (quoting Reebok Int'l Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1556 (Fed. Cir. 1994)). "Whether to grant a preliminary injunction under 35 U.S.C. § 283 is a matter largely within the discretion of the trial court." Adams Arms, Inc. v. Sig Sauer, Inc., No. 8:10-CV-146-T-27TGW, 2010 WL 3119777, at *3 (M.D. Fla. Aug. 2, 2010) (quoting Titan Tire, 566 F.3d at 1375). The remedy is "drastic and extraordinary" and is not one a court should "routinely" grant. Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd., 357 F.3d 1319, 1324 (Fed. Cir. 2004).

Because the irreparable harm analysis is dispositive here, the undersigned will address it first. "As its name implies, the irreparable harm inquiry seeks to measure harms that no damages payment, however great, could address." Celsis In Vitro, Inc. v. CellzDirect, Inc., 664 F.3d 922, 930 (Fed. Cir. 2012) (citing Altana Pharma AG v. Teva Pharm. USA, Inc., 566 F.3d 999, 1010 (Fed. Cir. 2009)). The moving party "must demonstrate the threat of irreparable harm by independent proof, or no injunction may issue." Pruvit Ventures, Inc. v. Forevergreen Int'l LLC, No. 4:15-CV-571-ALM-CAN, 2015 WL 9876952, at *3 (E.D. Tex. Dec. 23, 2015), report and recommendation adopted, No. 4:15-CV-571, 2016 WL 231160 (E.D. Tex. Jan. 19, 2016). "'Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant.'" Id. (citation omitted). Ultimately, to obtain injunctive relief the moving party must show that irreparable harm is likely. See Winter, 555 U.S. at 22 ("A court

may only issue injunctive relief if irreparable harm is 'likely'; granting an injunction based on a mere possibility of remote injury is insufficient, even if a [movant] has shown a nearly certain likelihood of success.").

Although Nivel asserts that it will suffer irreparable harm if the Court does not grant a preliminary injunction due to lost market share, lost revenue, reputational damage, price erosion, and loss of its exclusive market niche occasioned by Textron's sale of the accused product, (Doc. 3 at 17-21), Nivel offers only one piece of supporting evidence: the declaration of Brent Moore, President of Nivel and the first-named inventor of the '265 patent in suit (Doc. 4 ¶ 1). Moore's declaration consists mainly of conclusory statements and lacks evidentiary support. The declaration does not demonstrate that Nivel has lost market share to Textron or quantify Nivel's expected loss of market share. See Automated Merch. Sys., Inc. v. Crane Co., 357 F. App'x 297, 301 (Fed. Cir. 2009) ("lost market share must be proven (or at least substantiated with some evidence) in order for it to support entry of a preliminary injunction, because granting preliminary injunctions on the basis of speculative loss of market share would result in granting preliminary injunctions 'in every patent case where the patentee practices the invention.'") (quoting Nutrition 21 v. United States, 930 F.2d 867, 871 (Fed. Cir. 1991)). Nivel merely states is that the two companies directly compete; thus, each sale of a Textron seat assembly is a lost sale for Nivel. (Doc. 3 at 16-17). See Precision Med., Inc. v. Genstar Techs. Co., No. CIV.A. 10-5161, 2011 WL 1674354, at *18 (E.D. Pa. May 3, 2011) (denying motion for preliminary injunction where "Precision Medical provided no evidence that it has lost market share to

Defendants, and the sales data it presented offered no evidence of lost sales or a decrease in prices"). When asked at oral argument for its strongest evidence of irreparable harm, Nivel identified paragraph 30 of Moore's declaration[1] and relied heavily on Robert Bosch LLC v. Pylon Manufacturing Corporation for the proposition that the existence of a two-player market may well serve as a substantial ground for granting an injunction, because it creates an inference that the infringing sale amounted to a lost sale for the patentee. 659 F.3d 1142, 1151-52 (Fed. Cir. 2011) (finding loss "in market share and access to potential customers resulting" from sales of infringing product supports a finding of irreparable injury).[2]

However, to the extent that Nivel argues that Textron has "conceded that Nivel and Textron are direct and sole competitors in the market for injection molded convertible seat assemblies," (Doc. 31 at 11), Textron disagrees. Textron points to Nivel's failure to explain how Nivel's products practice the invention embodied in the '265 patent, identify any business opportunities that it has lost because of patent infringement, or acknowledge other competitors and products in the marketplace.

---

[1] "Each golf cart accommodates one seat assembly at a time, so if a consumer purchases a set assembly from Textron, that consumer will not need one from Nivel." (Doc. 4 at 6 ¶ 30).

[2] Bosch is distinguishable on the grounds that the relief in question was a permanent (not preliminary) injunction, and according to the Federal Circuit, the district court had "overwhelming evidence" of irreparable harm. Bosch, 659 F.3d at 1151. Unlike the Bosch court, the undersigned has little evidence to consider—much less overwhelming evidence—in determining whether to issue a preliminary injunction. Further, to the extent Bosch stands for the proposition that "a two-player market may well serve as a substantial ground for granting an injunction," the Federal Circuit did not hold that a two-player market necessarily mandates a preliminary injunction. Id. (emphasis in original).

(Doc. 29 at 39). Jeremy Crane, Textron's Business Development Representative at E-Z-GO, identifies several other competitors selling "multiple models of flip seats, including plastic cargo board flip seat kits." (Doc. 29-4 ¶¶ 6-7). Further, while Crane states that Nivel and Textron are the only companies that sell injection molded plastic flip seat kits, he qualifies his statement by noting that "these models also compete directly with other flip seat products that use composite plastic boards." (Id. ¶ 8). Textron and Nivel also disagree on the significance of Textron's affidavits, with Nivel resorting at oral argument to relying on Textron's declarations in an attempt to bolster its irreparable harm showing. While Nivel may have shown that only it and Textron manufacture injection molded plastic seat assemblies, at this stage of the litigation, it has not proven that the alleged harm cannot be compensated by money damages.

Though true that "price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm," the patentee must provide more than mere speculation from which the Court may make such a finding. See Celsis, 664 F.3d at 930 (affirming district court's grant of a preliminary injunction where several key pieces of evidence supported the decision, including fact and expert testimony on the damage to Celsis's price, reputation, and business opportunities, the difficulty quantifying the effect on reputation and business, among other issues, and specific financial records). Nivel's evidence of lost market share, price erosion, loss of goodwill, and loss of business opportunities, confined to Moore's declaration, constitutes little more than conjecture.

5

By comparison, Nivel's contentions regarding its loss of exclusivity are stronger than its other irreparable harm arguments. (Doc. 3 at 18-19). Its decision not to license the '265 patent and its actions to enforce its rights against alleged infringers like Red Hawk weigh in favor of finding irreparable harm. See Douglas Dynamics, LLC v. Buyers Prod. Co., 717 F.3d 1336, 1345 (Fed. Cir. 2013) (directing district court to enter permanent injunction in case where "the evidence shows that Douglas had never licensed the infringed patents, and intentionally chose not to, so that it could maintain market exclusivity").

Overall, the dearth of evidence demonstrating that Nivel cannot be compensated by monetary damages belies its claim of irreparable harm. Other courts with similarly sparse records have declined to grant preliminary injunctions. See, e.g., Automated Merch. Sys., 357 F. App'x at 301 (vacating preliminary injunction due in part to "lack of evidence supporting any type of harm that would not be compensable through monetary damages"); Pruvit Ventures, 2015 WL 9876952, at *6 ("This Court has nothing more than Mr. Williams and Mr. Millet's statements that, but for Pruvit's KETO//OS, Defendants would be enjoying market exclusivity; neither of which substantiates that Defendants have actually lost ketosis supplement market share due to Pruvit's KETO//OS and/or what percentage of share has been lost."); Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC, 708 F. Supp. 2d 527, 533 (D. Md. 2010) ("Here, the lone affidavit of MTH's founder and owner, Michael Wolf, which asserts imprecise and exaggerated potential losses, does not establish irreparable

harm."). In the absence of sufficient proof of irreparable harm, the Court will not grant the "drastic and extraordinary" remedy of a preliminary injunction against Textron.[3]

Accordingly, it is hereby

**ORDERED:**

Plaintiff Nivel Parts & Manufacturing Co., LLC's Motion for Preliminary Injunction (Doc. 3) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida the 1st day of May, 2017.

TIMOTHY J. CORRIGAN
United States District Judge

sj
Copies:

Counsel of record

---

[3] The Court need not address the remaining preliminary injunction factors.